

09/29/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ARLEN PAUL PILKINTON and | § | Case No. 05-43930 |
| AMY E. PILKINTON, | § | (Chapter 13) |
| | § | |
| Debtors. | § | |

### **MEMORANDUM OF DECISION**[1]

This Court has heard and considered the "Objection to Allowance of Claim #4 Filed by 21st Mortgage" filed by the Debtors, Arlen and Amy Pilkinton (collectively, the "Debtors") in the above-referenced case, and the response and objection thereto filed by 21st Mortgage Corporation (the "Claimant"). Upon the conclusion of the hearing, the Court scheduled the matter for a later ruling. This memorandum of decision disposes of all issues pending before the Court.[2]

### **Background**

The Debtors became indebted to the Claimant pursuant to a Retail Installment Contract – Security Agreement executed by Amy Pilkinton on June

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] This Court has jurisdiction to consider the Debtors' objection pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

-1-

12, 1997.  The indebtedness is secured by a purchase-money security interest in a 1997 Oak Creek 16 x 76 mobile home (the "Collateral").

On July 28, 2005, the Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code.  The Claimant thereafter filed its proof of claim #4 in the wholly secured amount of $40,732.93.  The Debtors subsequently filed their objection to the allowance of the claim as filed, asserting a valuation of the Collateral at only $8,250.00.  The sole issue presented to the Court relates to the value of the Collateral.

The Debtors, as the owners of the Collateral, proffered a collateral value of $18,259 — more than doubling the value originally asserted in their objection — based upon the appraisal testimony of Mr. Barry Thomas.  The Claimant offered the appraisal testimony of Ms. Lynn Browder, who valued the Collateral at $32,444 based upon NADA valuation information.

The significant variance in the values proffered by the parties was at least partially due to confusion regarding the precise model of the mobile home which the Debtors own and upon which the Claimant has a lien.[1]  There was also a significant disagreement regarding the adjustments which should be made to the "base structure value" of the mobile home.  In order to engage in a closer

---

[1] Ms. Browder testified that the Debtors' mobile home is an "Oak Creek" model manufactured by Oak Creek.  In contrast, Mr. Thomas testified, based on information from the manufacturer, that the Debtors' mobile home is a "Southern Star" model manufactured by Oak Creek.  The certificate of title for the mobile home designates the model of the home as "Nationwide."  (The seller of the mobile home was Nationwide Housing Systems, Inc.)

-2-

examination of the opposing appraisals and other factual discrepancies, the Court took the matter under advisement at the conclusion of the hearing.

## Discussion

A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim and is deemed allowed unless a party in interest objects. *See* 11 U.S.C. §502(a); FED. R. BANKR. P. 3001(f).  A proof of claim, however, does not qualify for that *prima facie* evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules.  *See First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J Dairy, Inc.)*, 112 B.R. 297, 300 (W.D. Ark. 1989).  Bankruptcy Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:

> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim.  If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c).  Likewise, if a creditor claims a security interest in property of the debtor, Rule 3001(d) requires the creditor to accompany his proof of claim with evidence that the creditor perfected a security interest.

Hence, the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with Bankruptcy Rule 3001 by alleging facts in the proof of claim that are sufficient to support the claim.  If the claimant satisfies these requirements, the burden of going forward with the

evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *See Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000). This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, *see In re Lenz*, 110 B.R. 523, 525 (D. Colo. 1990); or by the presentation of legal arguments based upon the contents of the claim and its supporting documents, *see In re Circle J Dairy*, 112 B.R. at 300. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *See In re Consumers Realty & Dev. Co.*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

In this case, since the Claimant filed a claim in compliance with the Federal Rules of Bankruptcy Procedure, including the attachment of a copy of the agreement upon which its claim is based, the claim is entitled to *prima facie* validity. To rebut that effect, the Debtors essentially alleged that the replacement value of the mobile home as of the petition date was far less than the $41,450.88 asserted in the claim. The evidence submitted by the Debtors at the hearing was clearly sufficient to bring the legitimacy of the secured claim into question and to

-4-

overcome the *prima facie* validity of such claim.  Thus, it becomes incumbent upon the Claimant to establish the validity and amount of its claim by a preponderance of the evidence.

However, the appraisal offered by the Claimant failed to properly identify the Collateral in that it did not identify the model of the mobile home.  Further, it appeared from the testimony of the Claimant's expert, Ms. Browder, that she failed to consider the model of the trailer in determining its "base structure value."[2]  Beyond those facts, Ms. Browder, inspected the Collateral and prepared a written appraisal report based upon a National Appraisal System format — a valuation format developed by National Appraisal Guides, Inc. — which is also the publisher of the N.A.D.A. MANUFACTURED HOUSING APPRAISAL GUIDE (hereafter referenced as the "NADA Guide").

As opposed to the "bluebook"-type values offered in the NADA Guide, the NAS format seeks to equip an appraiser to make a more particularized valuation of a mobile home based upon an actual physical inspection of the unit.  Ms. Browder's report is a product of such an inspection, and it rigidly follows the perfunctory procedures imposed by the NADA Guide.  Her report presents a "base structure value" of $26,816 for the mobile home, which she then adjusts by location (x 1.03%) and by condition (x 98%) to reach a condition-adjusted value

---

[2] In her testimony regarding her appraisal, Ms. Browder compared the model of a mobile home to the model of a car.  However, in arriving at a value, she appears to have double-counted the "option package" for the Debtors' mobile home by adding the standard options for the home (such as a built-in dishwasher, furnace and air conditioner) to the base price as "accessories."  Her only explanation for this analysis was that this is how she was taught to appraise mobile homes in a course she took some years ago.

of $27,068. She then upwardly adjusts the condition-adjusted value for particular components and accessories to the mobile home, which she treated as additions to the base structural value. Based upon her determination that the mobile home is in "good" condition[3] and her calculation of the values of various components and accessories, Ms. Browder appraised the Debtors' mobile home at $32,444.

The Debtors assert that the depreciated condition of the Collateral was not adequately taken into account by the Claimant's appraisal and justifies the establishment of a lower replacement value for the Collateral.[4] The Court agrees. Although Ms. Browder admitted seeing signs of deterioration in the Collateral, the only problem she noted in her report was "soft walls" in one of the bathrooms. She testified that, as to the other defects she observed during her walk-through, the problems were minor and, in her opinion, could be easily fixed.

Mr. Thomas testified on behalf of the Debtors based upon his experience as a licensed residential property appraiser. Although Mr. Thomas did not specialize in the appraisal of manufactured housing, he engaged in a closer inspection of the Collateral than Ms. Browder. As supplemented without contradiction by the

---

[3] Ms. Browder assessed a point value of 103 for the mobile home. According to the NADA Guide, a home that scores between 103-139 points is in good condition, while a home that scores between 61 and 102 points is in fair condition. According to the testimony of Mr. Thomas, a home is in "fair" condition under the NADA Guide when the home shows deterioration.

[4] The valuation of collateral in this context seeks to determine its "replacement value." *Assoc. Commercial Corp. v. Rash*, 520 U.S. 953, 956, 117 (1997). *Rash* invites courts to adjust any projected retail price to extent the price includes the value of items, such as transportation and installation costs, which the Debtors in this instance are obviously not receiving, *see id*. at 965, n.6. In this case, the Debtors' expert assessed the retail value of the mobile home at $19,259, which he then reduced by $1000, since any purchaser would have to pay approximately that amount to move the home from the site where it is currently located. In this case, since the Debtors intend to keep their mobile home, a downward adjustment to the value of the mobile home for removal costs will not be adopted or imposed by the Court

testimony of Mr. and Mrs. Pilkinton, the Collateral suffers from a compromise of the flooring in one of the baths due to water damage, damage to the ceilings of both bathrooms due to roof leaks, electrical problems, and plumbing problems in both bathrooms (*e.g.*, Mr. Browder observed that one of the sinks in the master bathroom was not working and that the second bathroom had no faucets or shower head).  Mrs. Pilkinton testified that, because they could not afford to repair their home, some of the water leaks continued for years.

In assessing a value for the Collateral, Mr. Thomas began with a base figure of $22,803, which is the base amount listed in the NADA Guide for a 1997 "Southern Star" model mobile home manufactured by Oak Creek.  Like Ms. Browder, he then applied a 1.03% locational adjustment, arriving at an adjusted value of $23,487.  In contrast to Ms. Browder, Mr. Thomas did not adjust upward for any of the components listed on Ms. Browder's form, since those components and accessories are standard for a "Southern Star" mobile home and are included in the base value.  Mr. Thomas assessed the Debtors' mobile home in "fair" condition, and he applied the appropriate condition multiplier for a mobile home in fair condition (x 82%), arriving at a location and condition adjusted value of $19,259.  He then reduced this amount by $1,000 for the cost of removing the mobile home from its current location.

It has been long recognized that "[v]aluation outside the actual market place is inherently inexact."  *Rushton v. Comm'r*, 498 F.2d 88, 95 (5th Cir. 1974).  Because the valuation process often involves the analysis of conflicting appraisal

testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses. *In re Coates*, 180 B.R. 110, 112 (Bankr. D.S.C. 1995) ("The valuation process is not an exact science and the court must allocate varying degrees of weight depending upon the court's opinion of the credibility of . . . [the appraisal] evidence.").[5] A bankruptcy court is not bound to accept the values in the parties' appraisals; rather, it may form its own opinion of the value of the subject property after considering all of the evidence presented. *In re Holcomb Health Care Svcs., L.L.C.,* 329 B.R. 622, 669 (Bankr. M.D. Tenn. 2004).

In weighing the evidence presented with the foregoing principles in mind, the Court finds the Debtors' evidence to be more compelling. Mr. Thomas' analysis was more reliable than that of Ms. Browder, and his testimony regarding the condition of the Collateral was more detailed and credible. The deteriorated condition of the Collateral, some of which was admittedly known to the Claimant's appraiser, demands a more serious deduction in value than that which was taken in the condition adjustment used in the Claimant's appraisal. The deteriorated condition of the Collateral also demands the elimination of any value enhancement for a bathroom that was not functional.

---

[5] In weighing conflicting appraisal testimony, courts generally evaluate a number of factors, including the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented. *In re Smith*, 267 B.R. 568, 572-73 (Bankr. S.D. Ohio 2001).

Therefore, based upon the evidence presented and for the reasons expressed herein, the Court concludes that the objection filed by the Debtors, Arlen and Amy Pilkinton, to the claim of 21st Mortgage Corporation must be sustained in part and denied in part. Claim #4 filed by 21st Mortgage Corporation is hereby allowed as a secured claim in the amount of $19,259, which the Court finds to be the replacement value of the Collateral, and the remaining amounts of such claim shall be allowed as a general unsecured claim. All other relief requested by any party is denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[6] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 9/29/2006

*Brenda T. Rhoades*   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

---

[6] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.